IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LORI SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-00831-O |
| | § | |
| SHRED-IT USA, INC., | § | |
| CARLOS ORTEGA and | § | |
| KELLIE FENTON, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION TO REMAND AND BRIEF IN SUPPORT

COMES NOW Lori Smith, Plaintiff in this action, pursuant to 28 U.S.C. § 1447(c), moves this Court for an order remanding this action to the 101st District Court of the State of Texas, County of Dallas, on the grounds that removal was improperly made and that this Court lacks diversity jurisdiction in this action. In support of this motion, Plaintiff shows as follows:

### I.
### Background

On or about April 1, 2010, Plaintiff filed her Original Petition in the 101st District Court of the State of Texas, County of Dallas, Cause No. DC-10-03834-E. A true and correct copy of Plaintiff's Original Petition is attached to Defendants' Notice of Removal as Exhibit D, which is filed with this Court. Plaintiff's suit alleges that Defendants discriminated against her because of her gender and in retaliation for her engaging in protected activity when she complained to Shred-It's director of human resources and others about the conduct of her supervisor, Chris Fox. Plaintiff further alleges a cause of action for defamation against Defendants Carlos Ortega and Kellie Fenton for defamatory statements made by them about Plaintiff to other employees of Shred-It.

On or about April 26, 2010, Defendants filed their Notice of Removal. In their Notice of Removal, Defendants assert that "removal is proper under 28 U.S.C. § 1332, because there is

complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs . . . the citizenship of Ortega and Fenton should be disregarded for purposes of determining jurisdiction under 28 U.S.C. §§ 1332 and 1441(b), because those parties have been improperly joined to defeat diversity jurisdiction" (Defendants' Notice of Removal at page 3).

## II.
## Arguments and Authorities

A.  Summary of Argument

Defendants' removal of this action to this Court was improper because the proper parties to this action are not diverse. There exists a reasonable basis to believe that Plaintiff's claims for defamation against the non-diverse Defendants, Carlos Ortega and Kelly Fenton, will succeed under Texas common law. Plaintiff's Original Petition properly pleads a claim for defamation against Fenton and Ortega that is factually specific as to the circumstances of the defamatory statements; the parties to whom they were made; the specific defamatory words that were published; and, in general, the time period they were made. Moreover, Fenton and Ortega may be liable for these defamatory statements pursuant to Texas law. As such, the Plaintiff's claims for defamation are proper and Plaintiff's Motion for Remand should be granted.

B.  Removal Standard: Burden on Removing Party

Removal statutes are strictly construed in favor of remand and against removal. *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002). The removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists. *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998); *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 921-22 (5th Cir. 1997); *Allen v. R&H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995). Removal jurisdiction must be strictly construed because it implicates important federalism concerns. *Frank v. Bear Stearns & Co.,* 128 F.3d 919, 922 (5th Cir. 1997). Any doubts concerning

removal must be resolved against removal and in favor of remanding the case back to state court. *Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 259 (5th Cir. 1995); *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir. 1999).

There are two general grounds upon which a court can find that a defendant was improperly joined: (1) actual fraud in the pleading of jurisdictional facts, or (2) an inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Larroquette v. Cardinal Health 200, Inc.*, 466 f.3d 373, 376 (5th Cir. 2006) *see also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (noting that the burden of proving fraudulent joinder is on the removing party).

When confronted with the task of determining if the plaintiff is unable to establish a state claim against the non-diverse party, the district court is to inquire as to "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added), cert. denied, 544 U.S. 992, 125 S. Ct. 1825, 161 L. Ed. 2d 755 (2005). To make that determination, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id*. Upon the improper joinder inquiry, the court must resolve all contested issues of fact in favor of the plaintiff. *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003). "The burden of persuasion on those who claim fraudulent[1] joinder is a heavy one." *Id*. at 649. The task of a district court is not to determine, at this early stage, whether a plaintiff will actually or will probably prevail on the merits of the

---

[1] In *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), cert. denied, 544 U.S. 992, 125 S. Ct. 1825, 161 L. Ed. 2d 755 (2005), the Fifth Circuit replaced the traditional but misleading label of "fraudulent joinder" with "improper joinder."

claim. *Rodriguez, 120 F.3d at 591*. Rather, the court looks only for a *possibility* that the plaintiff may prevail. *Id.*

C.  Plaintiff Properly Pleads Claims for Defamation

Pursuant to Texas law, a defamation claim requires proof that the defendant (1) published a statement; (2) that was defamatory as to the plaintiff; (3) while acting with actual malice or negligence regarding the truth of the statement. *See WFAA-TV Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998). A statement is defamatory if it tends to injure the person's reputation and thereby expose the person to public hatred, contempt or ridicule or financial injury or to impeach that person's honesty, integrity or virtue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (Vernon 1997); *Cain v. Hearst Corp.,* 878 S.W.2d 577, 580 (Tex. 1994); *Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85, 92 (Tex. App.-Dallas 1996, writ denied).

In her Petition, Plaintiff Smith specifically alleges that:

> In May of 2009, Carlos Ortega, an employee that Ms. Smith directly supervised, made allegations against her. These allegations were made in the wake of concerns raised by Ms. Smith regarding Mr. Ortega's conduct and concerns relating to whether client accounts had been mishandled by another employee, Kellie Fenton, whom Ms. Smith suspected was involved in a relationship with Mr. Ortega. These allegations were allegedly investigated by Denver Meyer. On May 29, 2009, Ms. Smith was told to stay home pending the "investigation."
>
> Ms. Fenton alleged to Denver Meyer and others that Ortega complained to her that Ms. Smith had made sexually suggestive and/or inappropriate comments to Mr. Ortega including: "'You know you liked what I did to you last night' and then Lori grabbed her breasts" and "You better have dinner on the table by 6 p.m. Bitch". Mr. Ortega also alleged that Ms. Smith referred to him as her "Mexican love slave" and that she told him she was going to "rip his head off." [2]

Plaintiff's Petition specifically identifies both the speakers (Defendants Ortega and Fenton), the specific defamatory statements and recipients of those statements (Fenton and Shred-It's human resources manger, Denver Meyers) and specifically states that the allegations against Ms. Smith

---

[2] Plaintiff's Original Petition at Page 4.

were made in May of 2009. Moreover, it is clear from the content of the statements that they would be defamatory to the Plaintiff.

Defendants assert in their Notice of Removal that Texas law requires the Plaintiff to specifically allege (and presumably prove) the time and place that the defamatory statements were made.[3] To support this proposition, they cite *Gipson v. Wal-Mart Stores, Inc.*, No. H-08-2307, 2008 WL 4844206, at *9 (S.D. Tex. Nov. 3, 2008) (citing *Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 2007 WL 1026412, at *5 (5th Cir. 2007)). A review of *Gipson* reveals that this assertion of Texas law is made with no explanation or citation to any Texas state court opinions or statutory authority. Furthermore, the Court relies on a Fifth Circuit opinion that says nothing about any specific requirement under Texas law that the time and place of an alleged defamatory statement must be specifically alleged in the plaintiff's petition. Actually, in *Ameen*, the 5th circuit recognizes that Texas law requires the plaintiff to "identify the alleged defamatory statement and the speaker."[4] Consistent with the requirements enunciated in *Ameen*, Plaintiff's petition specifically identifies the speakers and specifically quotes the defamatory statements in issue.

The Defendants further cite *Garrett v. Celanese Corp.*, 2003 U.S. Dist. LEXIS 14905 (N.D. Tex. Aug. 28, 2003) and *Jackson v. Dallas Indep. Sch. Dist.*, 1998 U.S. Dist. LEXIS 10328 (N.D. Tex. July 2, 1998) to support their contention that Plaintif has not pled with sufficient specificity. In *Garrett*, the Plaintiff failed to identify any specific defamatory statement, but instead alleged that defamatory statements were contained in his employment file.

In *Jackson*, the Court held that the plaintiff was required to replead by identifying, among other things, the specific time and place the defamatory statements were made. However, the Court does not rely upon any Texas case law or statutory authority for the proposition that the time or place a defamatory statement is a necessary element of the claim. Rather, the Court relies upon a

---

[3] Defedants' Motion to Dismiss at page 3.
[4] *Ameen*, 226 Fed. Appx. 363 at 370 (citing *Abbott v. Pollock*, 946 S.W.2d 513, 520 (Tex. App.-Austin 1997, pet denied) (addressing question of whether ambiguous statement was capable of defamatory meaning).

commonly cited federal practice guide, an Eastern District of Louisiana District Court opinion citing Louisiana law and a District of Columbia Circuit Court opinion.[5]

Plaintiff's Petition is substantially more specific than the pleadings discussed in these cases. Plaintiff has specifically identified the speakers, known recipients, quoted the specific defamatory statements and plead that the allegations against Ms. Smith were made in May of 2009.[6] Texas law does not require the plaintiff in a defamation action to plead or prove the time and place a defamatory statement was made. Nevertheless, Plaintiff's petition in this matter sufficiently pleads the factual basis of her claims for defamation.

D.  Communications Between Co-workers and Employer Constitutes Publication

Texas law provides that communications by co-employees may constitute a publication of a defamatory statement. *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765 (Tex. App.-Texarkana 1996, writ denied); *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, (Tex. App. Dallas 1986, no writ). In Stephens, the Texas Court of Appeals considered whether internal communications between company employees constituted a "publication". The Court opined:

> "Delhi acknowledges that it passed information about Stephens' firing on to certain managers, but claims that this did not constitute publication. . . . This defense, however, goes more to the question of legal excuse than to publication. *Ramos v. Henry C. Beck Co.*, 711 S.W.2d at 335; *see Montgomery Ward & Co. v. Peaster*, 178 S.W.2d 302, 305-06 (Tex. Civ. App.--Eastland 1944, no writ). Statements are published, even if they are made only to other employees or managers, but they are generally privileged unless they are made with malice."[7]

---

[5] Id at *14  Citing: "(citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1309 at 698 (2d ed. 1990). Courts require more particular pleading to allow the opposing party to raise the appropriate defenses. *Id.* Several courts have adopted this higher requirement. *See Legard v. Winn-Dixie La., Inc.*, 1995 U.S. Dist. LEXIS 12429, 1995 WL 495898, at *3 (E.D. La. Aug. 17, 1995); *Wiggins v. District Cablevision, Inc.*, 853 F. Supp. 484, 494 (D. D.C. 1994) (requiring that plaintiff "plead the time, place, content, speaker, and listener of the alleged defamatory matter"); *Ersek v. Township of Springfield, Delaware County*, 822 F. Supp. 218, 223 (E.D. Pa. 1993) (requiring complaint to specify "what allegedly defamatory statements were made by whom and to whom")."

[6] The Defendants also cite *Knatt v. Hospital Serv. Dist. No. 1*, 2009 U.S. App. Lexis 10451 ( 5th Cir 2009), a case that relies upon Louisiana law rather than Texas law for the proposition stated by Defendants. *Id*. at **20 (citing Doe v. Grant, 839 So. 2d 408, 416 (La. App. 4th Cir. 2003).  Louisiana law is obviously not dispositive of the claims asserted by the Plaintiff in this matter.

[7] *Stephens*, 924 S.W.2d at 769.

In *Ramos*, The Dallas Court of Appeals considered whether statements made between employees of the plaintiff's employer constituted a publication. The Court opined:

> "Beck does not contend that Baker did not understand the statement made, but apparently contends that there was no publication because the only person to whom the statement was communicated, Baker, was an employee of Beck. While Baker's status as an employee of Beck may have relevance to the question of privilege, it has no bearing on the issue of publication. [citation omitted] We hold that a fact issue exists as to publication." [8]

In *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, (Tex. 1995), the Texas Supreme Court considered whether coworkers of the plaintiff had defamed her when they alleged to their employer that the Plaintiff took merchandise without paying. In its opinion, the Court implicitly found that the statements by the employees to other store employees in the course of an internal investigation were publications. *Id.* at 646-647. Instead of concluding that no publication was made (as the Defendants in this matter argue), the Texas Supreme Court recognized that the statements were protected by a qualified privilege that required evidence that the statements were made with actual malice. *Id.* at 646. Logically, the qualified privilege would only be applicable if the statements were otherwise considered to constitute a defamatory publication. Numerous other Texas Courts have recognized that an intra-corporate communication between employees about another employee may constitute the publication of a defamatory statement. [9] If Ortega and Fenton plead and prove that the statements they made were qualifiedly privileged, then Plaintiff will be required to prove that the statements were made with "actual malice." Actual malice is demonstrated where the

---

[8] *Ramos.*, 711 S.W.2d at 335
[9] *See Hausenbauer v. O'Brien*, 1998 Tex. App. LEXIS 1991 (Tex. App. Houston 1st Dist. Apr. 2, 1998, no writ); *Riojas v. Elsa State Bank*, 1997 Tex. App. LEXIS 4199 (Tex. App. Corpus Christi Aug. 7, 1997, no writ); *Garcia v. Burris*, 961 S.W.2d 603, (Tex. App. San Antonio 1997, pet. denied); *Proctor & Gamble Mfg. Co. v. Hagler*, 880 S.W.2d 123, (Tex. App. Texarkana 1994), *writ denied*, 884 S.W.2d 771 (Tex. 1994); *See also Bell v. UPS*, 2000 U.S. Dist. LEXIS 3296 (N.D. Tex. Mar. 10, 2000); *Braswell v. Midwest Express Airlines*, 1998 U.S. Dist. LEXIS 1112, (N.D. Tex. Jan. 21, 1998); *Boze v. Branstetter*, 912 F.2d 801, (5th Cir. Tex. 1990).

statement was made with actual knowledge of its falsity. *Randall's Food Market Inc.*, 891 S.W.2d at 646.[10]

Plaintiff's petition specifically identifies statements made by Ortega to Fenton that were then republished by Fenton to the Shred-It human resources manager. Ortega and Fenton are clearly subject to potential liability for defamation even if all of the comments were made between Shred-It personnel. Moreover, Texas law provides that Ortega may also be liable for the republication of his statements to Shred-It.[11]

E.  Defamatory Publication may be Negligent or Intentional

In *WFAA-TV Inc. v. McLemore*, the Texas Supreme Court opines that a private plaintiff must prove that the defendant "was **at least** negligent."[12] A "Publication" has been defined as a **negligent or intentional** act that communicates a defamatory statement to a person other than the person defamed. *Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, (Tex. App. Houston 14th Dist. 1984, writ ref'd n.r.e.). In her petition, Ms. Smith specifically pleads that:

> "Ortega and Fenton communicated to other employees of Defendant Shred-It that Plaintiff sexually harassed and threatened Ortega. Said statements were false and untrue. Further, Defendants Ortega and Fenton published said statements with knowledge of their falsity. Said publications were made with malice and a lack of good faith."[13]

---

[10] In their notice of removal, Defendants suggest that they cannot be held liable for defamation because the statements were made in the course of a company investigation. This assertion is without merit under Texas law. It is clear that at best, the Defendants may be afforded a qualified privilege which would require the Plaintiff to prove that their statements were made with actual malice or want of good faith. *See e.g. Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, (Tex. 1995).

[11] Texas law provides that the original publisher of a defamatory statement may be liable for its repetition by a third party if the communication constitutes defamation per se and the repetition of the statement is the "natural or probable consequence of the original publication" *See S. H. Kress & Co. v. Lindley*, 46 S.W.2d 379, 381 (Civ. App.--El Paso 1932, no writ). Parties who reasonably foresee that their defamatory statements will be repeated to third parties may be held responsible for republications. *Stephan v. Baylor Medical Center at Garland*, 20 S.W.3d 880, 890 (Tex. App.--Dallas 2000, no pet.).

[12] 978 S.W.2d at 571 (emphasis added).

[13] Plaintiff's Original Petition at page 8.

In their Notice of Removal, Defendants assert that Plaintiff's claims for defamation against them are defective as pled, because there is no allegation that the defamatory statements were made "negligently." Defendants suggest that because Defendants Ortega and Fenton are not "public" figures that the Plaintiff must plead that their defamatory publications were done "negligently" as opposed to "intentionally." As the Texas Supreme Court held in *McLemore*, a defendant must be "at least negligent". In her Original Petition, Plaintiff specifically pleads that Ortega and Fenton published the statements with knowledge of their falsity, with malice and a lack of good faith. Intentional conduct is obviously a more culpable level of action than negligence. Defendants' assertion that that the Plaintiff's failure to plead negligence, rather than willful and malicious conduct is nonsensical and remand is appropriate.

F.     Co-workers may have Individual Liability for Defamation

In *Leyendecker & Assoc., Inc. v. Wechter*, the Texas Supreme Court affirmed that in Texas, an employee may be held personally liable for a defamatory statement about a co-worker, published by the employee.[14] In that opinion, the Texas Supreme Court restated the accepted legal proposition that an employee who directs or participates in a tortiuous act will have personal liability. Accordingly, the Court found that the employee who personally made the defamatory statement was liable to the Plaintiff. *Id.*     Texas law clearly provides that an employee may have personal liability for defamatory conduct involving communications in the work place regarding a co-worker.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that the Court grant Plaintiff's motion and remand this action to the 101st District Court of the State of Texas, County of Dallas and for such other and further relief to which Plaintiff is justly entitled.

---

[14] 683 S.W.2d 369, 375 (Tex. 1984).

        Respectfully submitted,

        _s/ Joel T. Gomez_
        **JOEL T. GOMEZ**
        Texas State Bar No. 00784142

        **THE GOMEZ LAW GROUP, PLLC**
        14135 Midway Road
        Suite 250
        Addison, TX  75001
        Phone: (214) 389-0998
        Facsimile: (214) 389-0986
        tgomez@gomezlawyers.com

        **COUNSEL FOR PLAINTIFF**

### CERTIFICATE OF CONFERENCE

On or about May 24, 2010, counsel for the parties personally conferred on this motion. Agreement could not be reached and this motion is being presented to the Court.

Certified to this 26th day of May 2010.

        _s/ Joel T. Gomez_
        Joel T. Gomez

### CERTIFICATE OF SERVICE

On the 26th of May 2010, the foregoing document was electronically submitted with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

| *VIA CM/ECF FILING* | *VIA CM/ECF FILING* |
|---|---|
| Gregory G. Pinski | Kelly J. Thurman |
| Conner & Pinski, PLLP | Locke Lord Bissell & Liddell LLP |
| 520 Third Avenue North | 2200 Ross Avenue |
| P.O. Box 3028 | Suite 2200 |
| Great Falls, MT  59403-3028 | Dallas, TX 75201 |

        _s/ Joel T. Gomez_
        Joel T. Gomez