IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LORI SMITH,

      Plaintiff,

v.                                                        3:10-CV-831-O-BK

SHRED-IT USA, et al.,

      Defendants.

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and the district court's order of July 27, 2010, this case has been referred to the United States Magistrate Judge for the conduct of pretrial proceedings. Plaintiff has filed a *Motion to Remand to State Court* (Docs. 6, 10), and Defendants Kellie Fenton and Carlos Ortega have filed a *Motion to Dismiss for Failure to State a Claim* (Doc. 14). The undersigned concludes that Defendants have failed to establish facts necessary to show complete diversity of citizenship of the parties, thus, this case should be remanded to the state court. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

In April 2010, Lori Smith filed a civil action in Texas state court against Defendants Shred-it USA, Inc. (Shred-it) and Carlos Ortega and Kellie Fenton, who were both employees of Shred-it. (Doc. 1 at Exh. D). She alleged that, in August 2008, she had a verbal dispute with her supervisor, Chris Fox, during which Fox engaged in threatening behavior. (*Id*. at 3). She further

alleged that Fox thereafter treated her in a hostile manner, all of which Smith reported to Shred-it's human resources manager, Denver Meyer. (*Id.* at 3). Smith also claimed that, in May 2009, Ortega told Fenton that Smith had made threatening and sexually specific comments to him, which Fenton then communicated to Meyer. (*Id.* at 3-4). Smith claimed that she was terminated a short time later. (*Id*. at 6). In her petition, she alleged state law claims of gender discrimination and retaliation against Shred-it, based on her own complaints to management about Fox. (*Id.* at 6-7). Smith also sued Ortega and Fenton for defamation, slander, and libel *per se* based on their communications to human resources about Smith's alleged harassing and threatening statements to Ortega. (*Id.* at 7-8).

Defendants subsequently filed a Notice of Removal of the case to federal district court, pursuant to 28 U.S.C. § 1446, alleging that removal was proper based on diversity jurisdiction. (Doc. 1). Specifically, they claimed that Smith was a Texas resident and Shred-it was a Delaware corporation with its principal place of business in Canada, and although Ortega and Fenton also were residents of Texas, Smith improperly had joined them to defeat diversity jurisdiction. (*Id.* at 3-4). Thus, Defendants claimed that the citizenship of Ortega and Fenton should be disregarded for purposes of finding diversity jurisdiction. In particular, Defendants contend that there are no facts alleged in Smith's petition that would support a defamation claim against Ortega and Fenton because (1) Smith's allegations of defamation did not specifically state the time and place of publication of the statements or identify the listener, (2) although Smith alleged libel *per se*, she did not identify any libelous writings by either Fenton or Ortega, (3) Ortega's and Fenton's statements were made during the course of a legally protected sexual harassment investigation into Smith's behavior and were thus privileged, (4) Smith could not

show any communication of the slanderous statements to a third party because intra-corporate communications among co-workers do not constitute "publication" for purposes of a defamation suit, and (5) Smith is not a public figure and therefore had to allege that Ortega and Fenton acted negligently in making the alleged statements, but that under Texas law, they could not be individually liable for negligent conduct. (*Id.* at 5-10).

Ortega and Fenton also filed a *Motion to Dismiss* under FED. R. CIV. P. 12(b)(6) raising the same arguments as the Notice of Removal. (Docs. 6, 7). Smith responded to the motion to dismiss, arguing that (1) her petition specifically identified the speakers, quoted the statements, and noted the recipients of the statements, which is sufficient to support a defamation claim under Texas law, (2) communications among her co-workers constitutes "publication" for purposes of a slander suit even though the statements may be afforded a qualified privilege, (3) Fenton and Ortega are individually liable for their intentionally defamatory statements, (4) she erroneously pled libel *per se*, but intended to plead that Fenton and Ortega were liable for slander *per se*, and she should be given an opportunity to amend her complaint to overcome that deficiency. (Doc. 9 at 2-9).

Smith has filed a *Motion for Remand to State Court*, arguing that there is a reasonable basis for the district court to believe that her claims against Ortega and Fenton will succeed under Texas common law because she properly pled a cause of action for defamation. (Doc. 11 at 2). In that motion, Smith generally reiterates the arguments she raised in opposition to Fenton and Ortega's *Motion to Dismiss*. (*Id.* at 4-9). Defendants oppose the *Motion for Remand to State Court*. (Doc. 12).

## II. APPLICABLE LAW

Under 28 U.S.C. § 1446, a defendant may remove a civil action from state court to federal court if the action originally could have been brought in federal court. 28 U.S.C. § 1441(a), (b). Suits arising under federal law are removable without regard to the citizenship of the parties; all other suits are removable "only if <u>none</u> of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 375 (5th Cir. 2006), quoting 28 U.S.C. § 1441(b) (emphasis added). The removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists. *St. Paul Reinsurance Co. Ltd. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998). Removal statutes are strictly construed in favor of remand and against removal. *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).

In evaluating citizenship for purposes of determining whether complete diversity exists, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). A defendant may argue, therefore, that a plaintiff has improperly joined a non-diverse defendant for purposes of defeating diversity jurisdiction, but the defendant's burden of persuasion is a heavy one. *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003).

There are two general grounds upon which a court can find that a plaintiff improperly joined a defendant in an effort to defeat diversity jurisdiction: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Larroquette*, 466 F.3d 373, 376 (5th Cir. 2006) (quotation omitted).

4

Only the latter ground is at issue in this case. (Doc. 1 at 3).

When determining whether the plaintiff is able to establish a state claim against the non-diverse party, the district court inquires whether there is any reasonable basis for the court to predict that the plaintiff might be able to recover against the non-diverse defendant. *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*). To make that determination, "[t]he court may conduct a FED. R. CIV. P. 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id*. (footnote omitted). In making the improper joinder inquiry, the court must resolve all contested issues of fact in favor of the plaintiff and looks only for a *possibility* that the plaintiff may prevail. *Travis*, 326 F.3d at 648-49.

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544*,* 570 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000).

Texas law recognizes two types of defamation: libel and slander. An action for libel

5

requires the publication of a written defamatory statement about the plaintiff to a third party. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 633-634 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Slander is an oral defamation published to a third party without legal excuse. *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 91 (Tex.App.-Corpus Christi 1992, writ dism'd w.o.j.). A defamation claim requires proof that the defendant (1) published a statement; (2) that was defamatory to the plaintiff; (3) while acting with actual malice, if the plaintiff was a public figure, or negligence if the plaintiff was a private individual, regarding the truth of the statement. *See WFAA-TV Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998). A statement is defamatory if it tends to injure the plaintiff's reputation and thereby exposes the person to public hatred, contempt, ridicule, or financial injury or if it tends to impeach that person's honesty, integrity, or virtue. *See Cain v. Hearst Corp.,* 878 S.W.2d 577, 580 (Tex. 1994); *Hanssen v. Our Redeemer Lutheran Church,* 938 S.W.2d 85, 92 (Tex. App.-Dallas 1996, writ denied).

### III.  DISCUSSION

The record does not bear out Defendants' contention that Ortega and Fenton, both citizens of Texas, were improperly joined to defeat diversity jurisdiction. Based on her state common-law defamation claim, there is a reasonable basis for the court to predict that Plaintiff might be able to recover against Ortega and Fenton, that is: there is the mere possibility that Plaintiff may prevail.

Defendants Ortega and Fenton first argue that Smith's allegations of defamation did not specifically state the time and place of publication of the statements or identify the listener. (Doc. 1 at 5). However, a review of Smith's petition indicates that she quoted Ortega's

statements to Fenton, which Fenton then reported to Shred-it's human resources manager. Smith also alleged that the communication took place in May 2009. (Doc. 1, Exh. D). Ortega and Fenton cite two unpublished cases, *Gipson v. Wal-Mart Stores, Inc.* 2008 WL 4844206, *9 (S.D. Tex. 2008) and *Ameen v. Merck & Co., Inc.* 226 Fed. Appx. 363, 370 (5th Cir. 2007), for the proposition that defamation claims specifically must include the time and place that the statements were published. *Ameen*, in turn, cites *Abbott v. Pollock*, 946 S.W.2d 513, 520 (Tex. App. - Austin 1997, pet. denied) for this statement of law. In *Abbott*, the court held that the plaintiffs failed to raise a material issue of fact when they relied on their belief, unsupported by personal knowledge or recollection and contradicted by the defense through sworn statements, that the defendant or his employees had spoken disparagingly about them.

This is distinguishable from Smith's case wherein she quoted the defamatory statements and alleged who said them to whom and the month and year of their publication. *Cf. Garrett v. Celanese Corp.*, 2003 WL 22234917 *5 (N.D. Tex. 2003) (noting that the plaintiff failed to state a defamation claim because she did not identify any specific defamatory statements, the time and place of the remarks, or the recipient of the statements). The Court has been unable to locate any binding precedent dictating as an *element* of a defamation claim that a plaintiff must specify the exact time and place of publication. Even if that is required, however, under the notice pleading standards of FED. R. CIV. P. 8, Smith's claim is sufficiently specific. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" FED. R. CIV .P. 8; *Bell Atlantic Corp.*, 550 U.S. at 554-55.

Ortega and Fenton next allege that because their statements were made during the course

of a sexual harassment investigation of Smith, they were privileged and cannot as a matter of law be defamatory. The Texas Supreme Court has held that an employer has a qualified privilege that attaches to communications made in the course of an investigation into reports of employee wrongdoing, and that privilege lasts as long as communications pass solely to persons having an interest or duty in the matter to which the communications relate. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). However, proof that a statement was motivated by actual malice defeats the privilege. *Id.* Here, while Ortega and Fenton may have engaged in privileged communications during the course of the investigation into Smith's allegedly harassing behavior, Smith alleges that their communications were made with actual malice, which would overcome any claimed privilege. *Id.* Accordingly, they cannot defeat the defamation claim under Rule 12(b)(6) based on this argument. *Travis*, 326 F.3d at 648-49 (noting that in making an improper joinder inquiry, the court must resolve all contested issues of fact in favor of the plaintiff and look only for a *possibility* that the plaintiff may prevail); *see also Bell Atl. Corp.,* 550 U.S. at 570.

In a somewhat related argument, Ortega and Fenton claim that their communications were not "published" because they were made only to other employees of Shred-it. Texas law is clear that statements are "published" even if only made to other employees or managers. *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765, 769 (Tex. App. - Texarkana 1996, writ denied); *see also Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App. - Dallas 1986) (noting that while recipient of allegedly defamatory statement was an employee of Beck, which

of a sexual harassment investigation of Smith, they were privileged and cannot as a matter of law be defamatory. The Texas Supreme Court has held that an employer has a qualified privilege that attaches to communications made in the course of an investigation into reports of employee wrongdoing, and that privilege lasts as long as communications pass solely to persons having an interest or duty in the matter to which the communications relate. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). However, proof that a statement was motivated by actual malice defeats the privilege. *Id.* Here, while Ortega and Fenton may have engaged in privileged communications during the course of the investigation into Smith's allegedly harassing behavior, Smith alleges that their communications were made with actual malice, which would overcome any claimed privilege. *Id.* Accordingly, they cannot defeat the defamation claim under Rule 12(b)(6) based on this argument. *Travis*, 326 F.3d at 648-49 (noting that in making an improper joinder inquiry, the court must resolve all contested issues of fact in favor of the plaintiff and look only for a *possibility* that the plaintiff may prevail); *see also Bell Atl. Corp.,* 550 U.S. at 570.

In a somewhat related argument, Ortega and Fenton claim that their communications were not "published" because they were made only to other employees of Shred-it. Texas law is clear that statements are "published" even if only made to other employees or managers. *Stephens v. Delhi Gas Pipeline Corp.*, 924 S.W.2d 765, 769 (Tex. App. - Texarkana 1996, writ denied); *see also Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App. - Dallas 1986) (noting that while recipient of allegedly defamatory statement was an employee of Beck, which

may have relevance to the question of privilege, it had no bearing on the issue of publication).[1]

Ortega and Fenton's last argument is that, because Smith is not a public figure, she had to allege that they negligently made the alleged statements, but under Texas law they cannot be held individually liable for negligent conduct. The problems with Defendants' argument are two-fold. First, Defendants' argument that Smith is required to prove negligence and, by implication, cannot charge them with *intentional* conduct, i.e. malice, is meritless. To establish a defamation case under Texas law, Smith, as a private individual, could show either negligence *or* malice of Ortega and Fenton. *See WFAA-TV, Inc.*, 978 S.W.2d at 571. Although Smith is a private figure, if she prefers to hold herself to the higher standard of proof in a defamation action by demonstrating Defendants' malice, she need not prove negligence at all. *See Braun v. Flynt*, 726 F.2d 245, 256-57 (5th Cir. 1984) (holding that a private plaintiff in a defamation action would be entitled to an award of punitive damages if she was able to demonstrate that the defendant acted with recklessness or malice in publishing the defamatory material); *A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 85 (Tex. App. - Ft. Worth 1982, writ refused n.r.e. 1983) (same).

Second, Defendants' argument that they cannot be held individually responsible for their negligence is similarly flawed. Defendants are correct that Texas law prohibits negligence-based recovery from an individual corporate employee if that individual owes no separate duty of care to the injured party apart from the employer's duty. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). However, an employee whose negligence causes, for example, an auto accident

---

[1] Although Defendant's cite *Lowery v. Allstate County Mut. Ins. Co.*, 2007 WL 1231703 *4 (N.D. Tex. 2007) for the proposition that intra-corporate communications among co-workers do not constitute "publication," Lowery is an unpublished district court case to which the Court gives little weight given Texas precedent to the contrary.

may be held individually liable along with his employer when driving in the course and scope of his employment because the employee owes a separate duty of care to others apart from his employer's duty. *Id.* The cases that Defendants cite are all premises liability actions in which the individual defendant did not owe a separate duty of care to the plaintiff. These cases are readily distinguishable from the instant case. Texas law is clear that a corporation's employee can be held personally liable for defamation if he directed or participated in the defamatory acts during his employment. *Leyendecker & Assoc., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984). Here, Smith alleges that Ortega and Fenton were the source of the defamatory statements and, thus, they could be held individually liable for slander. Accordingly, the citizenship of Ortega and Fenton should not be disregarded for purposes of diversity jurisdiction because there is a reasonable basis for the court to predict that Smith might be able to recover on her defamation claims against Ortega and Fenton. *Smallwood*, 385 F.3d at 573.

## IV.  RECOMMENDATION

For the foregoing reasons, it is recommended that the *Motion to Remand to State Court* be **GRANTED** and the *Motion to Dismiss* be **DENIED**.  Given the Court's conclusion, Smith's request that she be allowed to replead her defamation claim to allege slander *per se* rather than libel *per se*, (Doc. 9 at 8-9), should be **DENIED AS MOOT,** as Smith can seek that relief in state court upon remand.

Signed this 12th day of August, 2010.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).